**FAEGRE DRINKER BIDDLE & REATH LLP**
Zoë K. Wilhelm (SBN 305932)
*zoe.wilhelm@faegredrinker.com*
Michael Jaeger (SBN 289364)
*michael.jaeger@faegredrinker.com*
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

Attorneys for Plaintiff
Springfield Clinic, LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINGFIELD CLINIC, LLP,<br><br>  Plaintiff,<br><br>  v.<br><br>PRIMEX CLINICAL LABORATORIES, INC.,<br><br>  Defendant. | Case No. 2:21-cv-03595<br><br>**COMPLAINT FOR:**<br><br>I)  **BREACH OF CONTRACT**<br>II) **UNJUST ENRICHMENT**<br>III) **MONEY HAD AND RECEIVED**<br>IV) **CONVERSION**<br>V)  **NEGLIGENT MISREPRESENTATION**<br>VI) **VIOLATIONS OF CAL BUS. & PROF. CODE §§ 17200 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Springfield Clinic, LLP, by and through its counsel, for its Complaint against Defendant Primex Clinical Laboratories, Inc., pleads as follows:

## NATURE OF THE ACTION

1. Primex Clinical Laboratories, Inc. ("Primex") promised to provide 1 million 3M-brand N95 masks to Springfield Clinic, LLP ("Springfield") in exchange for a payment of nearly $1.8 million. Although Primex accepted that payment nearly a year ago, Springfield has received neither the 1 million masks nor a refund.

2. Springfield therefore brings this complaint against Primex for breach of a written contract, unjust enrichment, money had and received, conversion, negligent misrepresentation, and violations of California's Unfair Competition Law ("UCL").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the claim asserted in this matter pursuant to 28 U.S.C. § 1332(a), because there is complete diversity between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this district because the parties expressly agreed that any disputes would be heard in this Court.

5. Personal jurisdiction is proper in this district because the parties expressly consented to this Court's jurisdiction.

## PARTIES

6. Plaintiff Springfield is limited liability partnership formed in Illinois with its principal place of business in Springfield, Illinois. All of the partners in Springfield are individuals who are residents and citizens of Illinois.

7. Defendant Primex is a California corporation with its headquarters and principal place of business located at 16742 Stagg St. #120, Van Nuys, California, 91406.

# FACTUAL ALLEGATIONS

8. Springfield is a multi-specialty physician practice with medical offices throughout central Illinois that has been providing health care to the people in its community since the 1940s, and is a leader in delivering state-of-the-art health care to its patients.

9. In March 2020, the COVID-19 pandemic exploded across the United States. As of mid-April, 2020, COVID-19 cases in Illinois had surpassed 30,000. Springfield needed large quantities of personal protective equipment, including masks, in order to protect its staff and patients and to continue providing care.

## The Product Supply Agreement

10. In or about April 2020, Springfield contracted with Primex to provide Springfield with 1 million 3M N95 Mask Model #8210 for a total cost of $1,789,425.00, including tax. This agreement was memorialized in the parties' Product Supply Agreement ("PSA").

11. It was critical to Springfield that the masks be manufactured by 3M, so that Springfield could be assured that the masks met the N95 standard and patients and staff were fully protected. Indeed, the PSA reflects that the 3M brand was an essential term. The PSA describes Primex as "a High-Complexity Clinical Laboratory engaged in diagnostic testing and having supply chain accessibility to Personal Protective Equipment, namely 3M equipment." The PSA refers specifically to 3M masks multiple times, including in the section on acceptance of orders as well as in Exhibit A to the PSA, which sets forth the specific 3M products that are available to Primex.

12. The PSA states that once Springfield supplied Primex with a purchase order and Primex accepted that purchase order, a "binding purchase commitment" was created.

13. The PSA also states that Primex must accept all purchase orders placed by Springfield, provided that (1) the order is in writing, (2) the order is for at least

the minimum amount of products per order required by the manufacturer, and (3) Springfield is prepared to pay for the order in full in advance.

14. The PSA also states that an order will not "bind [Primex] unless it is accepted by [Primex] and full advance payment is received," meaning that if Primex accepts the order and full advance payment is received, Primex is bound.

15. The PSA also states that within two business days of receipt of a purchase order, Primex must deliver to Springfield copies of "applicable correspondence from the manufacturer indicating information relevant to each transaction, including but not limited to: Order Acknowledgment, Delivery ETA, Invoice Payment Confirmation, Order Fulfillment and Logistics Correspondence."

16. The parties agreed that the laws of the State of California would govern the interpretation of the PSA for purposes of any dispute arising under it, and that they would submit to the jurisdiction of this Court.

17. The PSA provides that a party may file an action against the other party related to the PSA if the parties have not reached an agreement within 20 days after a dispute has arisen.

### Springfield's Order and Payment of $1.79 Million

18. On April 30, 2020, Springfield sent a purchase order to Primex (purchase order no. 0000325640), setting forth an order for "3M N95 Mask Model # 8210" in a quantity of 1,000,000, at a cost of $1.70 each, for a total of $1,700,000 (the "Purchase Order").

19. Upon receipt of the Purchase Order, on April 30, 2020 Primex sent an invoice to Springfield (invoice no. PPP44), reflecting a total charge, including sales tax, of $1,789,425.00, for 1,000,000 "3M Particulate Respirator 8210, N95" (the "Invoice").

20. That same day, Springfield sent via wire transfer to Primex's bank account two payments totaling $1,789,425.00, one for $1,700,000.00 and one for

$89,425.00 (the "Payment"). Springfield confirmed by email to Primex that the two wire transfers had been initiated.

21. On May 2, 2020, Primex confirmed receipt of Springfield's payment in full.

**Primex's Refusal to Fulfill Springfield's Order in Full or Provide a Refund**

22. On or about December 1, 2020, a shipment of 1,280 3M 8210 N95 masks arrived at Springfield without a purchase order, invoice, requisition number, packing slip, or any other identifying information. From the shipping label, it appeared that the shipment came from Primex.

23. Springfield has yet to receive the remaining 998,720 masks it ordered and paid for, or a refund of the nearly $1.8 million it paid Primex (less approximately $2,176.00, the cost of 1,280 masks at $1.70 per mask).

24. On December 22, 2020, Primex notified Springfield that it would be unable to fulfill Springfield's order of 3M masks, and instead offered to provide a different brand of mask as an "equivalent."

25. Primex, through its Chief Financial Officer, Eric Garofano, stated, "If these products are acceptable, please respond with your acceptance of the intended replacement product to be shipped to Springfield Clinic."

26. That same day, Springfield notified Primex that the substitute products were not acceptable and requested a refund.

27. The next day, December 23, 2020, Mr. Garofano emailed back, "We can respect your decision regarding this order. We will be happy to work with you on a final resolution and begin a refund process."

28. For the next two months, Springfield repeatedly contacted Primex regarding the anticipated refund. In one phone call, Mr. Garofano told Springfield that he would provide a draft of a written release by the end of that same day and anticipated refunding Springfield's Payment within a couple of weeks. Weeks

later, Primex provided some "general" release language, which Springfield quickly approved, asking for a final version for signature.

29. Primex has not responded and has not responded to multiple later communications from Springfield and its counsel.

## COUNT I

### Breach of Contract

30. Plaintiff incorporates by reference paragraphs 1-28 of the Complaint as if fully set forth herein.

31. Springfield and Primex negotiated and consummated a valid contract, the PSA, governing Springfield's order of 3M masks from Primex.

32. Because Primex accepted Springfield's Purchase Order pursuant to the terms of the PSA, sent the Invoice to Springfield pursuant to the terms of the PSA, confirmed its receipt of Springfield's Payment pursuant to all three documents, but has not yet provided Springfield with either 1 million 3M N95 8210 masks or a refund of the full amount Springfield paid less approximately $2,176.00, Primex is in breach of the parties' agreement.

## COUNT II

### Unjust Enrichment
### pled in the alternative to Count I

33. Plaintiff incorporates by reference paragraphs 1-31 of the Complaint as if fully set forth herein.

34. If for any reason the Court should determine that the PSA is invalid or otherwise unenforceable, Primex has nonetheless been unjustly enriched at Springfield's expense in the amount of $1,787,249.00 plus any interest it has earned on that amount.

35. Springfield paid Primex $1,789,425.00 based on both parties' common understanding that in exchange, Primex would provide Springfield with 1,000,000 3M N95 masks.

36. Springfield has paid Primex $1,789,425.00. Primex confirmed its receipt of this payment by sending Springfield a receipt on May 2, 2020.

37. Primex has yet to provide Springfield with the 1,000,000 3M N95 masks Springfield ordered.

38. Primex is aware that it (1) received Springfield's Payment, (2) was thereby obligated to provide Springfield with the 1,000,000 3M N95 masks, and (3) has not provided Springfield with those masks.

39. Primex has therefore been unjustly enriched at Springfield's expense, in the amount of $1,787,249.00 plus any interest earned on that amount.

## COUNT III

**Money Had and Received**
**pled in the alternative to Count I**

40. Plaintiff incorporates by reference paragraphs 1-38 of the Complaint as if fully set forth herein.

41. If for any reason the Court should determine that the PSA is invalid or otherwise unenforceable, Springfield asserts in the alternative a common count for money had and received against Primex.

42. Primex has received funds from Springfield in the amount of 1,789,425.00, which funds were to be used for the benefit of Springfield in the form of payment for 1,000,000 3M N95 masks.

43. Because Primex has failed to fulfill Springfield's order of those masks in full, those funds – other than the $2,176 worth of masks that were apparently provided – have not been used for the benefit of Springfield.

44. Primex has not refunded the remaining $1,787,249.00 to Springfield.

## COUNT IV

**Conversion**
**pled in the alternative to Count I**

45. Plaintiff incorporates by reference paragraphs 1-43 of the Complaint as if fully set forth herein.

46. If for any reason the Court should determine that the PSA is invalid or otherwise unenforceable, Springfield asserts in the alternative a claim for conversion against Primex.

47. Primex has wrongfully exercised, and continues to wrongfully exercise, control over Springfield's property, specifically $1,787,249.00 in funds paid to it by Springfield.

48. Because Springfield made the Payment to Primex in exchange for an anticipated shipment of 1,000,000 3M N95 masks, and Primex has not provided Springfield with those masks, Springfield has the right to possess the $1,787,249.00 it paid for those masks.

49. Based on Primex's failure to fulfill Springfield's order of the paid-for masks, Springfield demanded the return of its $1,787,249.00 from Primex.

50. To date, Primex has refused to return the $1,787,249.00 after Springfield's demand.

51. Springfield has not consented to Primex's retention of the funds, and Springfield has been harmed by Primex's retention of the funds in the amount of $1,787,249.00.

52. Primex's refusal to return Springfield's $1,787,249.00 is a substantial factor in causing Springfield's harm.

## COUNT V

**Negligent Misrepresentation
pled in the alternative to Count I**

53. Plaintiff incorporates by reference paragraphs 1-51 of the Complaint as if fully set forth herein.

54. If for any reason the Court should determine that the PSA is invalid or otherwise unenforceable, Springfield asserts in the alternative a claim for negligent misrepresentation against Primex.

55. In the course of and by virtue of negotiating and consummating the PSA with Springfield and accepting Springfield's Purchase Order and Payment and issuing the Invoice, Primex represented to Springfield that it had the ability to fulfill Springfield's order for 1 million 3M N95 masks.

56. Specifically, the PSA stated that Primex had "supply chain accessibility to Personal Protective Equipment, namely 3M equipment" and that the 3M 8210 masks that Springfield anticipated ordering following execution of the PSA were "[a]vailable to the Supplier [Primex] and Manufactured by 3M."

57. It is evident from the fact that Primex has been unable to fulfill Springfield's order that Primex had no reasonable grounds for believing the representation was true at the time the representation was made.

58. Primex intended for Springfield to rely on the representation, as Primex's representation that it could supply Springfield's order was the reason Springfield placed the order with Primex.

59. By issuing the Purchase Order and making the Payment, Springfield reasonably relied on Primex's representation.

60. Springfield has been harmed by Primex's negligent representation, in the form of Springfield's lost $1,787,249.00 combined with Primex's failure to fulfill Springfield's full order.

61. Springfield's reliance on Primex's negligent representation was a substantial factor in causing Springfield's harm; indeed, but for Primex's negligent representation, Springfield would not have executed the PSA, issued the Purchase Order, or paid Primex $1,787,249.00.

### COUNT VI

**Violations of California's Unfair Competition Law
pled in the alternative to Count I**

62. Plaintiff incorporates by reference paragraphs 1-60 of the Complaint as if fully set forth herein.

63. If for any reason the Court should determine that the PSA is invalid or otherwise unenforceable, Springfield asserts in the alternative a claim for violation of California's Unfair Competition Law against Primex.

64. Cal. Bus. & Prof. Code § 17200 states that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…."

65. Cal. Bus. & Prof. Code § 17203 allows a court to make any order or judgment "necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

66. Primex's negotiation and consummation of the PSA with Springfield, its acceptance of the Purchase Order, issuance of the Invoice, and acceptance of Springfield's $1,789,425.00 payment, and its failure to fulfill Springfield's order or refund the Payment constitutes an unfair business practice under the UCL.

67. In addition, Primex's negligent misrepresentation set forth in Count V constitutes a fraudulent business practice under the UCL.

68. Pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Springfield is entitled to a judgment against Primex in the amount that Primex acquired from Springfield by means of its unfair competition, *i.e.*, $1,787,249.00.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

**WHEREFORE, PLAINTIFF PRAYS** that this Court grant it judgment as follows:

A. On Count I, judgment against Primex for breach of the PSA and damages in the amount of $1,787,249.00; or in the alternative;

B. On Counts II-VI, judgment against Primex in the total amount of the Payment less the cost of the 1,280 masks that were apparently provided, *i.e.*, $1,787,249.00;

1  C. Pre- and post-judgment interest;

2  D. Reasonable attorneys' fees and costs; and

3  E. Such other and further relief as this Court deems just and proper.

Dated: April 28, 2021

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Zoë K. Wilhelm*
       Zoë K. Wilhelm
       Michael Jaeger

Attorneys for Plaintiff
Springfield Clinic, LLP