BLANK ROME LLP
Arash Beral (SBN 245219)
aberal@blankrome.com
Saam Takaloo (SBN 311598)
saam.takaloo@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Third Party Defendant,
Counter-Claimant, and Third Party Plaintiff
TBS BUSINESS SOLUTIONS USA INC.
*erroneously sued as* TBS BUSINESS
SOLUTIONS, INC., and Third
Party Defendant TEWODROS SAHILU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINGFIELD CLINIC, LLP | Case No. 2:21-CV-03595-RSWL-AS |
|                       Plaintiff, | **THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.** |
|    vs. | |
| PRIMEX CLINICAL LABORATORIES, INC. | **JURY TRIAL DEMANDED** |
|                     Defendants. | |
| PRIMEX CLINICAL LABORATORIES, INC. | |
|                 Third Party Plaintiff, | |
|    vs. | |
| TBS BUSINESS SOLUTIONS, INC. and TEWODROS SAHILU | |
|                 Third Party Defendants. | |
| TBS BUSINESS SOLUTIONS USA INC. | |
|                 Third Party Plaintiff, | |
|    vs. | |
| STUDEBAKER DEFENSE GROUP, LLC, | |

GLENN HILL, TOM MARX, and MOES 1 through 10, inclusive

Third Party
Defendants.

Pursuant to Federal Rule of Civil Procedure Rule 14(a), Third Party Plaintiff TBS Business Solutions USA Inc. ("Third Party Plaintiff" or "TBS"), by and through its counsel, for its Third Party Complaint against Third Party Defendants Studebaker Defense Group, LLC ("Studebaker"), Glenn Hill ("Hill"), Tom Marx ("Marx"), and MOES 1 through 10, inclusive (collectively, the "Third Party Defendants") pleads as follows:

## **Parties**

1.      TBS is a California corporation with a principal place of business in the County of Riverside, California.

2.      TBS is informed and believes and thereon alleges that Studebaker is a Delaware limited liability company with a principal place of business in Cumming, Georgia.

3.      TBS is informed and believes and thereon alleges that Hill is an individual residing in Cleveland, Georgia, and is a controlling officer, member, and/or manager of Studebaker.

4.      TBS is informed and believes and thereon alleges that Marx is an individual residing in Alpharetta, Georgia, and is a controlling officer, member and/or manager of Studebaker.

5.      For purposes of this Third Party Complaint, Studebaker, Hill, and Marx will collectively be referred to as the "Studebaker Parties."  The Studebaker Parties, along with MOES 1 through 10, inclusive, will collectively be referred to as the "Third Party Defendants."

6.      The true names and capacities of the Third Party Defendants sued herein as MOES 1 through 10, inclusive, are currently unknown to TBS, who therefore sues

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

such Third Party Defendants by fictitious names. Each of the Third Party Defendants designated herein as a MOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the MOE Third Party Defendants when such identities become known.

7. TBS is informed and believes and thereon alleges that at all relevant times, each and every Third Party Defendant was acting as an agent and/or employee of each of the other Third Party Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Third Party Defendants. TBS is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Third Party Defendants.

## ALTER EGO ALLEGATIONS

8. TBS is informed and believes and thereon alleges that there is a unity of interest and ownership between and among the following parties, such that any individuality and separateness between them never existed or has ceased, and that said parties are alter egos of one another:

    a. Studebaker was conceived, intended, and/or used by Marx and/or Hill (and MOES 1 through 5, inclusive) as a device for the purpose of defrauding others, including TBS;

    b. Marx and/or Hill (and MOES 1 through 5, inclusive) exercised dominion over the finances of Studebaker and treated Studebaker's finances as their own;

    c. Marx and/or Hill (and MOES 1 through 5, inclusive) used the corporate form of Studebaker for their own purposes as though it was their own, and did not follow proper corporate formalities; and

    d. Adherence to the fiction of the separate existence of Studebaker as an entity distinct from Marx and/or Hill (and MOES 1 through 5, inclusive)

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

1  would permit an abuse of the corporate privilege and would sanction

2  fraud.

3  ### JURISDICTION & VENUE

4  9.    Jurisdiction is proper pursuant to 28 U.S.C. § 1367(a) because this Court

5  has supplemental jurisdiction over all of TBS's claims, as they are based upon the

6  same nucleus of operative facts as Plaintiff Springfield Clinic, LLP's original

7  Complaint filed in this action as well as the pleadings following therefrom.

8  10.    TBS is informed and believes and thereon alleges that the Court also

9  maintains personal jurisdiction over the Third Party Defendants insofar as the Third

10  Party Defendants have minimum contacts with California and purposefully availed

11  themselves of California's jurisdiction.

12  11.    TBS is informed and believes and thereon alleges that venue is proper in

13  the United States District Court for the Central District of California pursuant to 28

14  U.S.C. § 1391(b)(2) because the parties in this action conduct business within the

15  State of California including within this judicial district.

16  ### FACTUAL ALLEGATIONS

17  12.    TBS is a wholesaler and distributor of a wide range of products,

18  including personal protective equipment ("PPE").  TBS maintains various

19  relationships with manufacturers and distributors and is able to secure and fulfill

20  various PPE orders through its ordinary business channels.

21  13.    On or about April 20, 2020, Primex Clinical Laboratories, Inc.

22  ("Primex") approached TBS regarding the purchase of N95 masks.  TBS and Primex

23  consummated this transaction through purchase orders dated April 30, 2020.  Two of

24  such purchase orders were for 1,000,000 masks at a total sales price of $970,000

25  ("PO1"), and 1,500,000 masks at a total sales price of $1,455,000 ("PO2"),

26  respectively.

27

28

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

14.     After TBS informed Primex that it could not deliver masks manufactured by 3M, Primex authorized and TBS proceeded to place Primex's orders through wholesale supplier ORS Nasco, that was procuring its masks from Honeywell. However, ORS Nasco's delays in procuring the masks led to a sales rep named Tim Powers recommending Studebaker to fulfill the orders. Studebaker held itself to be a wholesale supplier that would be able to procure the required masks for TBS.

15.     Studebaker promised that it would be able to supply Honeywell branded DC301 N95 masks ("DC301 Masks") with dates certain for delivery by November 20, 2020 for the masks ordered under PO1 and January 15, 2021 for the masks ordered under PO2 ("Studebaker Parties' Representation No. 1").

16.     In reasonable reliance upon the Studebaker Parties' Representation No. 1, on or about October 19, 2020, TBS agreed to order the masks from Studebaker concerning PO1 ("Studebaker PO1"), for 50,000 boxes at a cost of $960,000. The Studebaker PO1 was clear that the DC301 Masks would be delivered by November 20, 2020. A true and correct copy of the Studebaker PO1 is attached hereto as **Exhibit A** and incorporated by reference herein.

17.     Approximately two weeks later, on or about November 5, 2020, Marx informed Tewodros "Teddy" Sahilu of TBS that Studebaker and Honeywell would be able to confirm the aforementioned purchase order so long as and as soon as TBS cancels its Honeywell mask orders through ORS Nasco ("Studebaker Parties' Representation No. 2"). TBS reasonably relied upon the Studebaker Parties' Representation No. 2, and canceled such existing purchase orders with ORS Nasco. TBS informed Marx via e-mail on November 6, 2020 that the orders with ORS Nasco were canceled.

18.     On or about November 23, 2020, however, TBS was informed that Honeywell had informed Studebaker that the Studebaker PO1 would be fulfilled by March 1, 2021, well beyond what was promised by the Studebaker Parties.

19.    In light of the foregoing, on or about December 1, 2020, TBS and Primex entered into revised purchase orders concerning PO1 and PO2 (the "Revised Primex POs"), that reflected the latest agreement between the parties.  On or about December 2, 2020, TBS wired the sum of $960,000 to Studebaker in connection with Studebaker PO1.

20.    In like kind, on or about December 4, 2020, TBS sent a purchase order to Studebaker for the DC301 Masks concerning the revised PO2 ("Studebaker PO2"), for 75,000 boxes at a cost of $1,440,000.  The Studebaker PO2 was clear that the DC301 Masks would be delivered by January 15, 2021.  A true and correct copy of the Studebaker PO2 is attached hereto as **Exhibit B**.  On or about December 8, 2020, TBS wired the sum of $1,440,000 to Studebaker in connection with Studebaker PO2.

21.    On or about December 17, 2020, TBS requested an update.  Marx responded that Honeywell had confirmed that all orders had been processed.  Indeed, the next day, TBS became informed that Honeywell had acknowledged the Studebaker PO2 with an estimated delivery date of January 12, 2021.

22.    The day before the shipment on Studebaker PO2 was to arrive, on or about January 11, 2021, TBS contacted Marx to inquire about the status of that order.  Marx informed TBS that the shipment in fulfillment of Studebaker PO1 was now scheduled to arrive on January 15, 2021 ("Studebaker Parties' Representation No. 3").

23.    On or about January 14, 2021, however, TBS became informed that the delivery of the Studebaker PO2 masks was going to be further delayed to February 15, 2021.  When TBS contacted Studebaker regarding this further delay, Marx denied it.  Marx informed TBS that the new expected delivery date was false, that the dates he had seen in the system and which were given to Studebaker from Honeywell are different from those given to TBS, and that the Vice President of PPE at Honeywell had assured Studebaker that Honeywell is working on fulfilling the PO2 masks on time ("Studebaker Parties' Representation No. 4").

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

24.    The next day, on or about January 15, 2021, Marx stated that Honeywell would deliver 349,200 DF300H919 model masks as an "interim solution" until the DC301 Masks are delivered ("Studebaker Parties' Representation No. 4").  Marx also represented that the DC301 Masks' delay was partly the result of a broken stamp head machine that is now fixed and underway, and that he requested that Honeywell furnish shipping documents as soon as possible for TBS's review ("Studebaker Parties' Representation No. 5").

25.    On or about January 19, 2021, Marx stated that he was ensuring that delivery of the masks would be expedited, that Honeywell was getting the shipment out that day, and that shipping documents would be provided as soon as the warehouse dispatched the order ("Studebaker Parties' Representation No. 6").

26.    Weeks and months went by and the Studebaker Parties continued their campaign of assuaging TBS.  As of April 2021, no masks had been delivered at all.

27.    On or about April 16, 2021, Primex then demanded that the Revised Primex POs be canceled.  Despite the fact that the Revised Primex POs were not cancelable, TBS attempted to honor Primex's wishes (without waiver of any of its rights).  That same day, TBS requested that Studebaker cancel the Studebaker PO2, and provided wire instructions for a refund of the sum of $1,440,000 wired to Studebaker on December 8, 2020.  No one from Studebaker acknowledged this request or otherwise responded to TBS.

28.    On or about April 20, 2021, Hill responded that TBS's cancelation request was forwarded to Studebaker's finance department and legal team, and that they would have an answer for TBS soon.  Hill mentioned that there were issues with canceling other clients' orders, so they were seeking guidance from the manufacturer on cancelations.

29.    On or about April 22, 2021, Hill informed TBS that the outstanding mask deliveries would be ready to ship immediately and that shipments would be seen in

the coming days ("Studebaker Parties' Representation No. 7").  Hill double-downed
on or about April 23, 2021, stating that Studebaker's team worked with Honeywell to
reallocate older orders to prioritize TBS's mask deliveries, and that progress would be
seen in the middle of the following week ("Studebaker Parties' Representation No.
8").

30.    On or about April 28, 2021, Hill informed TBS that Studebaker was
working to fulfill the remainder of TBS's Studebaker PO1 mask order in one
shipment, and that they were making good progress on reallocating the cancelled
Studebaker PO2 order ("Studebaker Parties' Representation No. 9").

31.    Another several weeks went by with nothing forthcoming.  On or about
May 20, 2021, TBS reached out directly to Honeywell regarding the outstanding order
issues with Studebaker, referencing the Honeywell order acknowledgment numbers
that Studebaker provided to TBS for the Studebaker PO1 and PO2.  TBS was
informed that *Honeywell had fulfilled all of Studebaker's purchase orders, and that
they have no outstanding obligations to Studebaker*.

32.    Upon this revelation, Mr. Sahilu immediately reached out to the
Studebaker Parties demanding a prompt refund of the money that Primex had wired to
TBS and which was then wired to Studebaker.

33.    On or about May 21, 2021, Hill sent a formal status update to TBS.  A
true and correct copy of this status update is attached hereto as **Exhibit C**.

a.    In the status update, the Studebaker Parties denied Honeywell's
contentions regarding Honeywell's fulfillment of all outstanding orders
("Studebaker Parties' Representation No. 10"), but did not provide any
substance or evidence that would counter such contentions.

b.    Hill represented vaguely once again that the Studebaker Parties were
working with Honeywell to complete the outstanding orders
("Studebaker Parties' Representation No. 11").

c. Over one month after TBS requested—and Studebaker acknowledged—cancelation of the Studebaker PO2 and a refund, Hill attempted to cast the blame on Honeywell, claiming that Honeywell's purchase orders are non-cancelable ("Studebaker Parties' Representation No. 12").

d. Hill also attempted to discourage legal action on TBS's part by blaming the global COVID-19 pandemic, and the U.S. government's subsequent mandates and control over Honeywell, to suggest that any litigation would not be prioritized by the courts ("Studebaker Parties' Representation No. 13").

e. At that point in time, $1,440,000 associated with Studebaker PO2 was overdue as was $700,000 out of the original $960,000 being owed and Studebaker had delivered $357,942 worth of masks or refunds overall. Hill offered for the outstanding portion of the Studebaker PO1, and the entire PO2, in lieu of a refund, where Studebaker would immediately send 2,450,000 alternative model Honeywell brand masks.

34. The same day, TBS responded to the Studebaker Parties' status update reiterating the request for a full refund of all outstanding funds given Primex's wish for a refund.

35. On or about May 25, 2021, Marx informed TBS that Studebaker's CFO emailed Honeywell to confirm the funds with them, and demanded that a refund be issued ("Studebaker Parties' Representation No. 14").

36. On or about June 14, 2021, Hill sent a second status update once again taking no responsibility and blaming the lack of mask delivery and lack of a refund squarely on Honeywell ("Studebaker Parties' Representation No. 15"). A true and correct copy of this June 14, 2021 status update is attached hereto as **Exhibit D**.

37. TBS is informed and believes and thereon alleges that the Studebaker Parties' Representation Nos. 1 through 15 were all false, made only to induce TBS to

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

believe that the Studebaker Parties were honest actors.  In truth, however, TBS is informed and believes and thereon alleges that the Studebaker Parties likely misappropriated and converted the subject funds for their own use.  And while the Studebaker Parties offered some alternative products to fulfill the subject orders, Primex rejected those products or any other form of resolution.

38.    As a result of the Third Party Defendants' conduct, TBS has been left without its funds, and without the goods that it paid for, leaving it with consequential damages, as well as loss of goodwill with its customers, among many other things.

## FIRST CLAIM FOR RELIEF

### Breach of Written Contract

### (Against Studebaker)

39.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

40.    TBS and Studebaker entered into the Studebaker purchase orders, consisting of the Studebaker PO1 and Studebaker PO2, under which TBS was to receive 50,000 boxes of the DC301 masks at a cost of $960,000, and 75,000 boxes of the DC301 masks at a cost of $1,440,000, respectively, for the benefit of Primex.

41.    TBS performed each and every one of its obligations under the Studebaker PO1 and PO2, or was excused from such obligations.

42.    Studebaker breached its obligations under the Studebaker PO1 and PO2 by failing to deliver $700,000 worth of DC301 Masks associated with the Studebaker PO1 to TBS, and the entirety of the DC301 Masks associated with the Studebaker PO2, despite collecting all of the money due for such masks from TBS.

43.    As a direct and proximate result of Studebaker's breaches of the Studebaker PO1 and PO2, TBS has been damaged in an amount to be proven at trial in excess of $2,180,000.

///

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

## SECOND CLAIM FOR RELIEF

### Restitution to Avoid Unjust Enrichment

### (Against the Third Party Defendants)

44.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

45.    TBS paid the sum of $2,440,000 to the Third Party Defendants in December 2020 for a total of 125,000 boxes of DC301 masks, per the Studebaker PO1 and PO2.  As of the date of filing of this Third Party Complaint, Studebaker has delivered only $260,000 worth of masks to TBS, and has been unable to furnish TBS with the remaining masks that are the subject of the aforementioned purchase orders.

46.    TBS has demanded a refund but the Third Party Defendants have failed and refused to provide such refund.  The Third Party Defendants have therefore been unjustly enriched at the expense of TBS in the amount of at least $2,180,000.

47.    As a direct and proximate result of the Third Party Defendants' conduct, TBS has been damaged and is entitled to disgorgement of the amount of at least $2,180,000.

## THIRD CLAIM FOR RELIEF

### Money Had and Received

### (Against the Third Party Defendants)

48.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

49.    TBS paid the sum of $2,440,000 to the Third Party Defendants in December 2020 for a total of 125,000 boxes of DC301 Masks, per the Studebaker PO1 and PO2.  Such funds were to be utilized by the Third Party Defendants for the benefit of TBS (and third party beneficiary, Primex) in the form of payment for the 125,000 boxes of the DC301 Masks.

10

50.     The Third Party Defendants have failed to deliver $2,180,000 worth of DC301 Masks pursuant to the Studebaker PO1 and PO2 or provide a refund, and therefore, the sum of $2,180,000 paid by TBS to the Third Party Defendants was not in fact utilized for the benefit of TBS and Primex.

51.     The Third Party Defendants have refused and continue to refuse to return the amount of at least $2,180,000 to TBS and Primex.

52.     As a direct and proximate result of the Third Party Defendants' conduct, TBS has been damaged and is entitled to disgorgement of the amount of at least $2,180,000.

## FOURTH CLAIM FOR RELIEF

### Account Stated

### (Against the Third Party Defendants)

53.     TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

54.     The Third Party Defendants owed TBS money from previous financial transactions in the form of pending refunds for goods not delivered.

55.     TBS and the Third Party Defendants, by words or conduct, agreed that the amount that TBS claimed to be due from the Third Party Defendants was the correct amount owed.

56.     The Third Party Defendants, by words or conduct, promised to pay the stated amount to TBS.

57.     The Third Party Defendants have not paid TBS any of the amount owed under this account; and

58.     The Third Party Defendants currently owe TBS at least $2,180,000.

///
///
///

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

**FIFTH CLAIM FOR RELIEF**

**Open Book Account**

**(Against the Third Party Defendants)**

59.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

60.    TBS and the Third Party Defendants had financial transactions with each other through the Studebaker POs, which include pending refunds that the Third Party Defendants owe to TBS.

61.    TBS, in the regular course of business, kept both a written and electronic account of the debits and credits involved in the transactions.

62.    The Third Party Defendants owe TBS at least $2,180,000 on the account.

**SIXTH CLAIM FOR RELIEF**

**Conversion**

**(Against the Third Party Defendants)**

63.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

64.    The Third Party Defendants substantially interfered with and converted TBS's property by, among other things, taking a payment of $2,180,000 for the DC301 Masks that are the subject of the Studebaker PO1 and PO2, and failing to deliver such masks to TBS.

65.    TBS demanded a refund of the $2,180,000 paid to the Third Party Defendants due to Studebaker's failure to deliver the DC301 Masks.

66.    The Third Party Defendants have failed and refuses to return the sum of $2,180,000 to TBS despite TBS's demands.

67.    TBS did not consent to the Third Party Defendants' retention of the aforementioned sum of $2,180,000.

161352.00603/126910598v.4

12

THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.

68.    TBS was harmed by the Third Party Defendants' conduct mentioned herein.

69.    The Third Party Defendants' conduct was a substantial factor in causing TBS's harm.

70.    The Third Party Defendants are liable for any loss or damages, subject to proof, suffered by TBS as a direct and proximate result of the Third Party Defendants' acts and omissions alleged herein.  While TBS cannot ascertain at this time the full nature and extent of damages suffered resulting from the conduct of the Third Party Defendants, TBS is informed and believes, and on that basis alleges, that it is not less than $2,180,000, plus interest, subject to proof at trial.

71.    Additionally, the Third Party Defendants have acted fraudulently, oppressively, and maliciously.  Thus, in addition to compensatory damages, TBS is also entitled to recover exemplary and punitive damages from the Third Party Defendants.

### SEVENTH CLAIM FOR RELIEF

**Violation of California Penal Code Section 496**

**(Against the Third Party Defendants)**

72.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

73.    California Penal Code Section 496(a) provides: "Every person who … conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner … shall be punished …" Penal Code section 496(c) in turn provides that: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

74.    As alleged above, the Third Party Defendants currently owe at least $2,180,000 to TBS but have failed to remit that payment.  Such funds were to be used

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

towards the purchase of the DC301 Masks that are the subject of the Studebaker PO1 and PO2. Once TBS canceled the Studebaker POs due to the Studebaker Parties' failure to perform and demanded the return of its money, the Third Party Defendants had no further right, title, license, or interest to retain the $2,180,000.

75.    Indeed, upon TBS's demand for the return of its money, the Third Party Defendants knew that they had no further right to conceal or withhold TBS's money from it. As such, and once TBS demanded the return of its money and the Third Party Defendants refused to return it, the character of that money transformed to stolen property. Therefore, once the Third Party Defendants engaged in a scheme to conceal and withhold TBS's money after they had no further right, title, license, or interest in that money, they knew that they were stealing the property or otherwise obtaining that property in a manner constituting theft.

76.    In refusing to return the $2,180,000 to TBS, the Third Party Defendants intentionally and substantially interfered with TBS's property rights. Certainly, TBS did not consent to allow the Third Party Defendants to retain the $2,180,000.

77.    As a result of the Third Party Defendants' conduct, TBS has been damaged, and the Third Party Defendants' conduct was a substantial factor in causing TBS's harm.

78.    TBS is informed and believes, and on that basis alleges, that the Third Party Defendants have utilized the subject funds for their own purposes such that an imposition of a constructive trust on the interests of the Third Party Defendants, including any business interests, profits, investments, real estate, and other assets, is necessary and appropriate under the circumstances.

79.    The conduct alleged above constitutes a violation of Penal Code Section 496 such that TBS is entitled to recover "three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees," in accordance with Penal Code Section 496(c).

THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.

80.     In the alternative to treble damages as provided for in Penal Code Section 496, TBS alleges that in doing the things described above, the Third Party Defendants acted with the intent to deprive TBS of its legal rights and to injure it such that the Third Party Defendants' actions constitute fraud, oppression, or malice within the meaning of Civil Code Section 3294.  The Third Party Defendants' conduct was and continues to be despicable, oppressive, and outrageous, justifying the imposition of punitive and exemplary damages against the Third Party Defendants to make an example of the Third Party Defendants and to deter such conduct in the future in an amount that proof at trial may indicate is appropriate.

## EIGHTH CLAIM FOR RELIEF

### Intentional Misrepresentation

### (Against the Studebaker Parties)

81.     TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

82.     The Studebaker Parties, individually and on behalf of Studebaker, made various representations in order to induce TBS to cancel other orders, provide substantial funds to them, and rely upon them to fulfil these orders.  Those representations are set forth above (Studebaker Parties' Representation Nos. 1 through 15).

83.     The Studebaker Parties' representations were false or misleading.

84.     The Studebaker Parties knew that the representations made to TBS were false or misleading when they made them, or, at minimum, they made the representations recklessly and without regard for their truth.

85.     The Studebaker Parties intended for TBS to rely upon their misrepresentations.

86.     TBS reasonably relied on the Studebaker Parties' Representations Nos. 1 through 15 by canceling other orders, entering into revised purchase orders with

Primex, providing the $2,440,000 in funds to Studebaker, and otherwise relying upon the Studebaker Parties' promises to fulfil the orders.

87.   TBS's reliance on the Studebaker Parties' representations was a substantial factor in causing TBS's harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above, and/or would not have agreed to enter into the transactions underlying the Studebaker PO1 and PO2, or continue to work with the Studebaker Parties.

88.   TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

89.   In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS's rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

## NINTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against the Studebaker Parties)

90.   TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

91.   The Studebaker Parties, both individually and on behalf of Studebaker, made various representations as described above.

92.   The Studebaker Parties' Representation Nos. 1 through 15 were false or misleading as described above.

93.   The Studebaker Parties had no reasonable grounds for believing that such representations were true when they made them.

94.   The Studebaker Parties intended that TBS rely on their misrepresentations.

THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.

95.    TBS reasonably relied on the Studebaker Parties representations as described above.

96.    TBS's reliance on the Studebaker Parties' representations was a substantial factor in causing TBS's harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above.

97.    TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

## TENTH CLAIM FOR RELIEF

### False Promise

### (Against the Studebaker Parties)

98.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

99.    The Studebaker Defendants, both individually and on behalf of Studebaker, made various representations as described above (Studebaker Parties' Representations No. 1 through 5), all of which constituted promises that the Studebaker Parties did not intend to perform.

100.    Such promises were false or misleading as described above.

101.    The Studebaker Parties knew that their promises were false or misleading when they made them or, at a minimum, made the promises recklessly and without regard for their truth.

102.    The Studebaker Parties intended that TBS rely on their promises.

103.    TBS reasonably relied on the Studebaker Parties' promises.

104.    TBS was harmed by the Studebaker Parties' promises as the Studebaker Parties failed to perform.

105.    TBS' reliance on the Studebaker Parties' representations was a substantial factor in causing TBS's harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above.

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**

106.   TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

107.   In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS's rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF

### Concealment

### (Against the Studebaker Parties)

108.   TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

109.   TBS and the Studebaker Parties were in a business relationship as parties to the Studebaker POs.  The Studebaker Parties had the direct connection to the manufacturer, Honeywell and, as such, held a superior position over TBS by virtue of the direct access to knowledge on the whereabouts of the masks and the status of the purchase orders.  Moreover,  no party is allowed to speak a "half-truth" by concealing the material facts underlying its representations.

110.   In making the Studebaker Parties' Representations Nos. 1 through 15, the Studebaker Parties disclosed some facts to TBS but intentionally failed to disclose other facts, making their representations deceptive.  These omitted facts were known and could only have been known to the Studebaker Parties.  These omitted facts included facts about the true status of the orders, the shipments, and the subject funds, among other things.

111.   The Studebaker Parties knew of the concealed facts.

112.   The Studebaker Parties intended to deceive TBS by concealing these facts.

113.    Had the Studebaker Parties disclosed the concealed facts to TBS, TBS would reasonably have acted differently.

114.    TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

115.    In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS's rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

## TWELFTH CLAIM FOR RELIEF

### Equitable Indemnity

### (Against the Third Party Defendants)

116.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

117.    As more specifically set forth in Primex's Third Party Complaint, Primex claims that TBS breached the Revised Primex POs, among other causes of action.

118.    While TBS denies liability in connection with Primex's claims, in the event that TBS is found to be liable to Primex, any such liability should be secondary and derivative in light of the Studebaker Defendants' acts and omissions described herein.

119.    Accordingly, should TBS be found to be liable to Primex in any amount in connection with the allegations set forth in Primex's Third Party Complaint, TBS seeks complete indemnity from the Third Party Defendants.

120.    TBS has been forced to incur legal fees, including reasonable attorney's fees and costs, in defending itself against claims by Primex due to the torts of others (the Third Party Defendants named here).  TBS is thus entitled to an award of its reasonable attorney's fees and costs.

161352.00603/126910598v.4

19

THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.

## THIRTEENTH CLAIM FOR RELIEF

### Violations of The Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL")

### (Against the Third Party Defendants)

121.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

122.    Through the all of the acts alleged above, the Third Party Defendants have engaged in unfair, unlawful and/or fraudulent conduct in violation of the UCL.

123.    The Third Party Defendants' acts and practices are immoral, unethical, oppressive, unscrupulous, and substantially injurious to TBS.

124.    The Third Party Defendants have unreasonably and unjustifiably retained the monetary benefits of engaging in said unfair business practices, all of which benefits have unjustly enriched the Third Party Defendants.

125.    As a result of the foregoing, TBS is entitled to restitution and injunctive relief as a result of the Third Party Defendants' unfair business practices.

## FOURTEENTH CLAIM FOR RELIEF

### Accounting

### (Against the Third Party Defendants)

126.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

127.    The Third Party Defendants have retained over $2 million of TBS's funds without delivering any product or refunds in the absence of fulfilled purchase orders.

128.    The amounts and status of the funds held by the Third Party Defendants at this time is unknown and could only be ascertained by an accounting.

129.    TBS thus demands an accounting of all funds belonging to TBS.

161352.00603/126910598v.4

20

THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure Rule 38(b), TBS demands a trial by jury of all issues triable herein.

**PRAYER FOR RELIEF**

WHEREFORE, TBS prays for:

1.    General, special, and consequential damages in an amount not less than $2,180,000;

2.    Disgorgement of all funds unjustifiably withheld;

3.    Constructive trust(s) over all assets of the Third Party Defendants;

4.    Exemplary and punitive damages in an amount to be proven at trial;

5.    Treble damages;

6.    Pre-judgment and post-judgment remedies including temporary restraining orders, preliminary injunctions, permanent injunctions, temporary protective orders, right to attach orders, writs of attachment, etc.

7.    Indemnity;

8.    Pre- and post-judgment interest;

9.    Reasonable attorneys' fees and costs; and

10.    Such further and other relief as this Court deems just and proper.


DATED:  October 5, 2021          BLANK ROME LLP


By: */s/ Saam Takaloo*
    Arash Beral
    Saam Takaloo
    Attorneys for Third Party Defendant,
    Counter-Claimant, and Third Party Plaintiff
    TBS BUSINESS SOLUTIONS USA INC.
    *erroneously sued as* TBS BUSINESS
    SOLUTIONS, INC., and Third
    Party Defendant TEWODROS SAHILU

**THIRD PARTY COMPLAINT OF TBS BUSINESS SOLUTIONS USA INC. AGAINST STUDEBAKER DEFENSE GROUP, LLC, ET AL.**