'O'

1

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11   SPRINGFIELD CLINIC, LLP,          CV 21-03595-RSWL-ASx

12        Plaintiff,                   **ORDER re: TBS Defendants'**
                                       **Motion for Judgment on**
13        v.                           **the Pleadings** [78]

14   PRIMEX CLINICAL
15   LABORATORIES, INC.,

16        Defendant.
     ─────────────────────────
17   PRIMEX CLINICAL
     LABORATORIES. INC.,
18
19        Third-Party Plaintiff,

20        v.

21   TBS BUSINESS SOLUTIONS USA
     INC.; and TEWODROS SAHILU,
22
23        Third-Party Defendants.

24        Plaintiff Springfield Clinic, LLP ("Springfield")

25   initiated this Action [1] against Defendant Primex

26   Laboratories, Inc. ("Primex"), alleging: (1) breach of

27   contract; (2) unjust enrichment; (3) money had and

28   received; (4) conversion; (5) negligent

                              1

1   misrepresentation; and (6) violations of California's
2   Unfair Competition Law.
3       On July 7, 2021, Primex impleaded TBS Business
4   Solutions, Inc. ("TBS") and Tewodros Sahilu
5   (collectively, "TBS Defendants").  Primex filed a Third-
6   Party Complaint [14] against TBS Defendants for: (1)
7   breach of contract; (2) unjust enrichment; (3) money had
8   and received; (4) conversion; (5) negligent
9   misrepresentation; (6) violations of California's Unfair
10  Competition Law; and (7) equitable indemnity.
11      Currently before the Court is TBS Defendants'
12  Motion for Judgment on the Pleadings (the "Motion")
13  [78].  Having reviewed all papers submitted pertaining
14  to this Motion, the Court **NOW FINDS AND RULES AS**
15  **FOLLOWS**: the Court **GRANTS** TBS Defendants' Motion.
16                  **I.   BACKGROUND**
17  **A.   Factual Background**
18      Springfield is a multi-specialty physician practice
19  that provides health care throughout central Illinois.
20  Compl. ("Springfield Compl.") ¶¶ 6, 8, ECF No. 1.  On or
21  about April 6, 2020, Springfield entered into a Product
22  Supply Agreement ("PSA") with Primex, a diagnostic
23  service provider, for the purchase of 1 million 3M-
24  branded masks.  Third-Party Compl. ("Primex Compl.")
25  ¶ 11, ECF No. 14.  On April 30, 2020, Springfield sent a
26  purchase order to Primex in accordance with the PSA
27  ("Springfield Purchase Order").  Springfield Compl.
28  ¶ 18.  That same day, Primex responded to the

1   Springfield Purchase Order with an invoice for
2   $1,789,425, and Springfield paid the invoice by wire
3   transfer.  Id. ¶¶ 19-20.
4       Immediately upon receipt of these funds on April
5   30, Primex tendered the sum of $970,000 to TBS, a
6   supplier and distributor of various goods, in exchange
7   for 1 million 3M masks.  Primex Compl. ¶ 19.  This was
8   the first of a series of transactions entered into
9   between Primex and TBS in April, May, and June 2020.
10  Id. ¶ 17.  Through these transactions, Primex sought to
11  fulfill the Springfield Purchase Order along with orders
12  placed by seven other clients.  Id. ¶ 17 tbl.1.  In
13  fact, Primex placed three additional orders with TBS on
14  April 30, 2021, for clients other than Springfield.  Id.
15  This included an order for 1.5 million masks for a total
16  purchase price of $1,455,000.  Id.
17      Primex alleges that Sahilu, an agent and alter ego
18  of TBS, had represented to Primex that TBS could obtain
19  3M products more quickly than any other wholesaler and
20  that Primex would receive priority allocation of masks
21  because Primex was a first responder.  Id. ¶¶ 5, 18.
22  However, TBS failed to supply masks sufficient to
23  satisfy the Springfield Purchase Order or any of the
24  other purchase orders from Primex's various clients.
25  Primex Compl. ¶ 20.  Primex accepted some alternative,
26  non-3M branded masks from TBS and was refunded a total
27  of $1,086,400.  Id. ¶¶ 22 tbl.2, 23.  Primex alleges
28  that TBS refuses to either perform its remaining

contractual obligations or refund the remaining balance owed to Primex.  Id. ¶ 25.  Primex now seeks recovery from TBS for a total of $2,220,731.20.  Id. ¶ 24.  This total includes an alleged balance owed for the orders involving Primex clients other than Springfield.  Id. ¶¶ 17 tbl.1, 22 tbl.2; id. Prayer for Relief.

**B.  Procedural Background**

Springfield filed its complaint ("Springfield Complaint") [1] against Primex on April 28, 2020. Primex filed its third-party complaint ("Primex Complaint") [14] on July 7, 2020, impleading TBS Defendants into this Action.  TBS Defendants then filed a third-party complaint [29] on October 5, 2020, impleading Studebaker Defendants.  On January 6, 2022, this Court granted [57] Studebaker Defendants' motion to dismiss TBS's third-party complaint.  TBS then amended its Answer [60] to the Primex Complaint on January 19, 2022, to include counterclaims against Studebaker Defendants that were nearly identical to the claims it had alleged in its third-party complaint.  Studebaker Defendants moved to dismiss [71] the counterclaims brought against it, and the Court granted Studebaker Defendants' motion [77].

TBS Defendants filed the instant Motion for Judgment on the Pleadings [78] on May 20, 2022; Primex filed its Opposition [79] on June 1, 2022; TBS Defendants replied [83] on June 7, 2022.

///

1    **II.   DISCUSSION**

2    **A.   Legal Standard**

3         Federal Rule of Civil Procedure 12(c) states that
4    "[a]fter the pleadings are closed . . . a party may move
5    for judgment on the pleadings."  Judgment on the
6    pleadings is appropriate when the moving party is
7    entitled to judgment as a matter of law.  Fajardo v.
8    County of Los Angeles, 179 F.3d 698, 699 (9th Cir.
9    1999).  A motion for judgment on the pleadings is
10   "functionally identical" to a Rule 12(b)(6) motion to
11   dismiss for failure to state a claim, meaning the same
12   pleading standards apply.  Dworkin v. Hustler Magazine,
13   Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  Allegations
14   in the non-moving party's pleadings are taken as true,
15   and facts are viewed in the light most favorable to the
16   non-moving party.  Living Designs, Inc. v. E.I. DuPont
17   de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005).
18   Any allegations made by the moving party that are denied
19   or contradicted are assumed to be false.  MacDonald v.
20   Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir.
21   2006); Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d
22   1480, 1482 (9th Cir. 1984).

23        Judgment on the pleadings is improper when the
24   district court goes beyond the pleadings to resolve an
25   issue; such a proceeding must properly be treated as a
26   motion for summary judgment.  Hal Roach Studios, Inc. v.
27   Richard Feiner & Co., 896 F.2d 1542, 1550 (citing Fed R.
28   Civ. P. 12(c)).  However, the court may consider facts

1   that are subject to judicial notice.  <u>Heliotrope Gen.,</u>
2   <u>Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 981 n.18 (9th Cir.
3   1999).

4   **B.   <u>Analysis</u>**

5         1.   <u>Bad Faith Allegation</u>

6         Primex asserts that TBS Defendants filed the
7   instant Motion in bad faith and that counsel for TBS
8   Defendants admitted to bringing this Motion to "buy
9   time."  <u>See</u> Decl. of Houston M. Watson ("Watson Decl.")
10  ¶¶ 7-9, ECF No. 79-1.  TBS Defendants dispute this
11  interpretation of its counsel's words and object to the
12  statements in the Watson Declaration on various
13  evidentiary grounds.  <u>See</u> Decl. of Arash Beral in Supp.
14  of Reply ¶ 4, ECF No. 83-1; TBS Defs.' Evid. Objs. to
15  Watson Decl., ECF No. 83-2.

16        The Court will consider TBS Defendants' Motion
17  regardless of the bad faith allegations because there is
18  a strong legal basis for finding that the impleader of
19  TBS Defendants was improper.  The merits of the Motion
20  thus run contrary to the notion that it was filed in bad
21  faith.  For this reason, the Court also declines to
22  issue sanctions here based on any recklessness by TBS
23  Defendants' counsel.  <u>See</u> <u>Calop Bus. Sys., Inc. v. City</u>
24  <u>of L.A.</u>, 984 F. Supp. 2d 981, 1020-21 (C.D. Cal. 2013).
25  Because the Court concludes that the Motion should be
26  granted regardless of the bad faith allegations, the
27  Court need not consider TBS Defendants' evidentiary
28  objections to the Watson Declaration and therefore

1    **OVERRULES** them as moot.

2        2.   <u>The Motion</u>

3        TBS Defendants move for judgment on the pleadings,

4    asserting that: (1) Primex failed to properly plead

5    alter-ego liability against Sahilu; (2) Primex's Counts

6    II-VII fail to state valid claims; and (3) Primex

7    improperly joined TBS Defendants to this Action.  <u>See</u>

8    <u>generally</u> Mot.  The Court finds that TBS Defendants'

9    impleader was improper under Rule 14 of the Federal

10   Rules of Civil Procedure for three reasons.  First, the

11   Springfield Complaint and the Primex Complaint concern

12   two distinct contracts regarding entirely separate

13   transactions.  Second, Primex fails to state a claim for

14   equitable indemnity because TBS Defendants' liability is

15   not derivative of the main action.  Lastly, permitting

16   TBS Defendants to remain in this suit would not promote

17   judicial efficiency.

18       The Court therefore **GRANTS** TBS Defendants' Motion.

19   Because the improper joinder of TBS Defendants is

20   dispositive of the Motion, the Court need not address

21   TBS Defendants' other arguments concerning alter ego

22   liability and failure to state a claim.

23            a.   <u>Joinder under Rule 14</u>

24       A defendant is permitted to implead a third party

25   "who is or may be liable to it for all or part of the

26   claim against it."  Fed. R. Civ. P. 14(a)(1).  "The

27   crucial characteristic of a Rule 14 claim is that the

28   defendant is attempting to transfer to the third-party

defendant the liability asserted against him by the
original plaintiff." Stewart v. Am. Int'l Oil & Gas
Co., 845 F.2d 196, 199 (9th Cir. 1988) (quoting 6 Fed.
Prac. & Proc. § 1446 (1971 ed.)). Thus, for impleader
to be permitted, the third party's liability must be "in
some way dependent on the outcome of the main claims"
and be secondary or derivative in nature. United States
v. One 1977 Mercedes Benz, 708 F.2d 444, 452 (9th Cir.
1983) (citations omitted).

It is not enough that the facts underlying the main
claim and those underlying the third-party claim are
"inextricably intertwined." Uldricks v. Kapaa 382, LLC,
No. 07-117 JMS/KSC, 2007 WL 2694409, at *4 (D. Haw.
Sept. 11, 2007). A third-party claim is also not
derivative of the main claim simply because the pending
action between the plaintiff and defendant establishes
the measure of damages sustained by the defendant due to
a breach by a third party. Ruthardt v. Sandmeyer Steel
Co., No. Civ. A. 94-6105, 1995 WL 434366, at *2 (E.D.
Pa. July 21, 1995).

i.  Separate and Distinct Contracts

Impleader is improper where the underlying suit and
the third-party suit are governed by separate and
distinct contracts. See Stewart, 845 F.2d at 199
(affirming the district court's ruling that impleader
was improper where "the transaction which gave rise to
the original complaint and the transaction which gave
rise to the third-party complaint were completely

separate"); see also Ruthardt, 1995 WL 434366, at *2
(finding impleader improper where defendant alleged that
a third party's breach of its contract with defendant
caused defendant to breach its separate contract with
plaintiff).  Here, joinder of TBS Defendants to this
Action is improper because TBS Defendants' liability to
Primex is governed solely by the provisions of the
Primex-TBS contract.  Thus, TBS Defendants' liability is
not derivative in nature because it in no way depends on
the outcome of the suit between Springfield and Primex.

Primex argues that impleader is proper because the
Springfield-Primex contract and the Primex-TBS contract
were negotiated and executed contemporaneously on April
30, 2020.  Opp'n 6:19-22.  But the action between
Springfield and Primex arises from a Product Supply
Agreement, dated April 6, 2020, which led to a Purchase
Order on April 30, 2020.  Primex Compl. ¶ 11.  By
contrast, the claims between Primex and TBS Defendants
arise from a series of transactions entered into in
April, May, and June 2020.  Id. ¶ 17.  Moreover,
Primex's claims against TBS Defendants also involve
orders for masks destined for other clients.  Id. ¶ 17
tbl.1.  These facts together establish that the
Springfield and Primex Complaints involve distinct
transactions and separate contracts.

The fact that both contracts may have involved the
same product does not make TBS Defendants' liability
derivative in nature.  See Produce Pay, Inc. v.

1   <u>Agrosale, Inc.</u>, 533 F. Supp. 3d 1140, 1144 (S.D. Fla.

2   2021) (concluding impleader was improper because the

3   main action and third-party action were governed by

4   separate contracts, even though the very same shipment

5   of produce was involved in both branches of litigation).

6   Regardless, the masks that TBS ultimately procured for

7   Primex were different from the ones Primex had

8   originally contracted for with Springfield.  Primex

9   Compl. ¶ 21.

10      Because the Springfield and Primex Complaints

11   concern separate contracts with distinct facts

12   underlying their creation and execution, TBS Defendants'

13   liability does not depend on the outcome of the suit

14   between Springfield and Primex.  It may be found that

15   TBS Defendants are not liable to Primex even if Primex

16   is found liable to Springfield.  Conversely, it may be

17   the case that TBS Defendants breached their contract

18   with Primex even though Primex did not breach its

19   contract with Springfield.  These possibilities support

20   the conclusion that impleader of TBS Defendants is

21   improper.  <u>See</u> <u>Stewart</u>, 845 F.2d at 199; <u>Ruthardt</u>, 1995

22   WL 434366 at *2.

23          ii.  <u>Equitable Indemnity</u>

24      Impleader requires some legal basis for holding TBS

25   Defendants liable for Springfield's injuries, such as an

26   assertion of "contribution, indemnification,

27   subrogation, or another type of vicarious liability."

28   <u>Ruthardt</u>, 1995 WL 434366, at *2.  Because the two

actions are governed by separate contracts, the only possible basis for TBS Defendants' derivative liability is Primex's claim for equitable indemnity.  However, this equitable indemnity claim fails because Primex has not proven that TBS Defendants had a sufficient legal obligation to Springfield.

Equitable indemnity "permit[s] a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors."  Am. Motorcycle Ass'n v. Superior Ct., 20 Cal. 3d 578, 598 (1978).  Under California law, equitable indemnity also encompasses claims for implied contractual indemnity, which exists where "two parties in a contractual relationship were both responsible for injuring a third party."  Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1159 (2009).  However, implied contractual indemnity is not available "in the absence of a joint legal obligation to the injured party."  Id. at 1160.  Thus, the success of Primex's indemnity claim hinges on whether TBS Defendants owed a duty to Springfield, either in contract or in tort.  See Patton v. Experian Data Corp., No. SACV 17-01559-JVS(DFMx), 2018 WL 6184773, at *3 (C.D. Cal. Sept. 12, 2018).

Primex argues that TBS Defendants owed a duty to Springfield because all of the Purchase Orders between TBS and Primex clearly indicated that Springfield was the ultimate delivery destination and because TBS accepted money from Primex knowing it came from

11

1   Springfield.  Opp'n 2:11-15, 8:6-7.  Primex thus argues
2   that these facts made Springfield a beneficiary of the
3   Primex-TBS contract and created a duty of care running
4   from TBS to Springfield.  Id. at 13:9-11.

5       First, there is no contractual duty running from
6   TBS to Springfield because the Springfield-Primex
7   agreement does not refer to TBS and does not evince an
8   intent to incorporate the Primex-TBS agreement.  See
9   generally Springfield Compl; see Unilease Comput. Corp.
10  v. Major Comput. Inc., 126 F.R.D 490, 493 (S.D.N.Y 1989)
11  (holding that where plaintiff's lease with defendant did
12  not refer in any way to defendant's lease with third-
13  party defendant, impleader was improper because there
14  was no indication of an intent to incorporate the third-
15  party agreement by reference).  While Primex may have
16  only played an intermediary role, its contractual duty
17  to Springfield was not contingent on TBS's delivery of
18  masks to Primex.

19      Further, TBS's knowledge that the goods it agreed
20  to supply would ultimately be delivered to Springfield
21  did not create a contractual duty running from TBS to
22  Springfield.  Id. at 493.  Primex alone owed a
23  contractual duty to Springfield to deliver masks
24  pursuant to their agreement.  Since the underlying claim
25  between Springfield and Primex is governed by a contract
26  that does not include TBS, TBS Defendants are not
27  jointly and severally liable to Springfield for Primex's
28  breach.  See Zurich Am. Ins. Co. of Il., 2020 WL

1   2732046, at *9 (E.D. Cal. May 26, 2020) (holding that
2   defendant and third party were not jointly and severally
3   liable for defendant's breach of contract with plaintiff
4   where third party did not contract with plaintiff);
5   Produce Pay, Inc., 533 F. Supp. 3d at 1145 (finding
6   defendant's allegation that it was acting as an
7   intermediary between plaintiff and a third party
8   insufficient to conclude that either contract at issue
9   was contingent on the performance of the other, and
10  therefore no duty existed between plaintiff and third
11  party).

12      Primex's claim that a tort duty exists running from
13  TBS to Springfield also fails.  The Primex Complaint's
14  allegations regarding the existence of a tort duty are
15  conclusory and not entitled to deference.  See Tesoro
16  Refin. & Mktg. Co. LLC, 2014 WL 4364393, at *5 (N.D.
17  Cal. Aug. 29, 2014).  Moreover, the California Supreme
18  Court has held that negligent breach of contract is
19  generally insufficient to establish tort liability.
20  Erlich v. Menezes, 21 Cal. 4th 543, 552 (1999).  Some
21  California cases have found a tort duty of care running
22  from a third party to a plaintiff where two separate
23  contracts governed the action.  See, e.g., Langley v.
24  Pac. Gas & Elec. Co., 41 Cal. 2d 655, 660 (1953).
25  However, these cases are limited to special situations
26  warranting independent tort damages, such as
27  construction contracts or duties owed by public
28  utilities derived from the Public Utilities Code.

1  *Willdan v. Sialic Contracts Corp.*, 158 Cal. App. 4th 47,
2  50; *Langley*, 41 Cal. 2d at 661.

3       Here, Primex offers no compelling rationale for
4  finding that a tort duty exists between TBS and
5  Springfield.  Primex had the freedom to bargain for an
6  express indemnification clause in its contract with TBS
7  and failed to do so.  There are no inequities in
8  bargaining power or other policy reasons to support
9  treating Primex differently than any other business
10 entity.  See *Tesoro Refin. & Mktg. Co. LLC v. Pac. Gas &*
11 *Elec. Co.*, No. 14-cv-00930-JCS, 2014 WL 4364393, at *6
12 (N.D. Cal. Aug. 29, 2014) (finding no tort duty between
13 third-party and plaintiff where there was no independent
14 basis for the duty, such as a state regulation evincing
15 an intent to impose such a duty, or policy reasons to
16 support treating the third-party differently from a
17 typical business entity).  The California Supreme Court
18 has cautioned against awarding such tort remedies in
19 contract disputes because "restrictions on contract
20 remedies serve to protect the 'freedom to bargain over
21 special risks and [to] promote contract formation by
22 limiting liability to the value of the promise.'"
23 *Erlich*, 21 Cal. 4th at 553 (quoting *Freeman & Mills,*
24 *Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 98 (1995)).
25                 iii.  Judicial Efficiency
26      Finally, even if TBS Defendants were derivatively
27 liable to Springfield, impleader would not serve Rule
28 14's purpose of promoting judicial efficiency.  *Sw.*

1   <u>Adm'rs, Inc. v. Rozay's Transfer</u>, 791 F.2d 769, 777 (9th
2   Cir. 1986).

3        The distinct facts underlying the negotiation and
4   execution of the Springfield-Primex contract and the
5   Primex-TBS contract would make litigating them together
6   inefficient.  Each Complaint describes an entirely
7   distinct set of events and transactions.  <u>Compare</u>
8   Springfield Compl., <u>with</u> Primex Compl.  The Complaints
9   relate to one another only in that they both involved
10  the purchase of the same product.  <u>See</u> Springfield
11  Compl. ¶ 1; Primex Compl. ¶ 18.  The Primex Complaint,
12  however, involves transactions with seven clients other
13  than Springfield and seeks relief against TBS Defendants
14  related to all seven transactions.  Primex Compl. ¶ 17-
15  22, 17 tbl.1.  Thus, the Primex Complaint involves
16  claims regarding transactions that are irrelevant to the
17  underlying suit between Springfield and Primex.  <u>See</u>
18  <u>Helferich Pat. Licensing, LLC v. Legacy Partners</u>, LLC,
19  917 F. Supp. 2d 985, 989-90 (D. Ariz. 2013) (denying
20  impleader where the original claim and third-party claim
21  were governed by different contracts because it would
22  raise issues extraneous to the primary contract).

23       In short, Primex has not sufficiently established
24  that TBS Defendants would be derivatively liable in the
25  event Primex is held liable to Springfield.  Permitting
26  the impleader of TBS Defendants would unduly complicate
27  litigation of Springfield's claims and would not serve
28  the goal of judicial efficiency.  The parties in this

1   Action would be best served by the opportunity to
2   litigate their contractual disputes separately.
3   Impleader of TBS Defendants into this Action is thus
4   improper, and the Court therefore **GRANTS** the Motion for
5   Judgment on the Pleadings.

6             b.  Leave to Amend

7       "The court should give leave [to amend] freely when
8   justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the
9   Ninth Circuit, "Rule 15's policy of favoring amendments
10  to pleadings should be applied with 'extreme
11  liberality.'"  United States v. Webb, 655 F.2d 977, 979
12  (9th Cir. 1981).  In deciding whether to grant leave to
13  amend, a Court may consider "the presence of . . . bad
14  faith, undue delay, prejudice to the opposing party,
15  and/or futility."  Owens v. Kaiser Found. Health Plan,
16  Inc., 244 F.3d 708, 712 (9th Cir. 2001).

17      Primex claims that it is "ready willing and able"
18  to supplement and elaborate on the derivate nature of
19  the duty undertaken by the TBS Defendants in connection
20  with the acquisition of the masks for Springfield. Opp'n
21  7:19-20.  However, even if Primex was willing to amend
22  and limit its Complaint against TBS Defendants to the
23  transactions exclusively relating to the Springfield
24  Purchase Order, Primex would still lack a basis for
25  derivative liability because the two Complaints are
26  based on distinct contracts.

27      The other facts that Primex states it would add are
28  either irrelevant to derivative liability or are already

1  alleged in the Primex Complaint.  <u>See</u> Opp'n 7:18-8:7.
2  Because the defective impleader of TBS Defendants into
3  this Action cannot be cured through amendment, leave to
4  amend would be futile.  <u>See</u> <u>Nat'l Funding, Inc. v. Com.</u>
5  <u>Credit Counseling Servs., Inc.</u>, 817 F. App'x 380, 385
6  (9th Cir. 2020) (affirming district court's denial of
7  leave to amend where plaintiff "failed to delineate any
8  additional facts it would add in support of [its] claim
9  to cure [the] deficiencies").  The Court therefore
10 **DENIES** Primex leave to amend.

### III.  CONCLUSION

12      Based on the foregoing, the Court **GRANTS** TBS
13 Defendants' Motion for Judgment on the Pleadings and
14 **DISMISSES** the Primex Complaint **without leave to amend.**
15      **IT IS SO ORDERED.**

17 DATED: July 25, 2022            /s/ Ronald S.W. Lew
18                         **HONORABLE RONALD S.W. LEW**
                           Senior U.S. District Judge

17